UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEVIN STERLING DESMOND | CIVIL ACTION |
| VERSUS | NUMBER: 12-1190 |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | SECTION: "G"(5) |

**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration ("SSA") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits based upon disability. (Rec. docs. 19, 20).

Kevin Sterling Desmond, plaintiff herein, respectively filed the subject applications for DIB and SSI benefits on November 10 and December 12, 2008, with a protective filing date of November 3, 2008, alleging disability as of October 21, 2006. (Tr. pp. 136-138, 139-141, 162). In a Disability Report that appears in the record, the conditions resulting in plaintiff's inability to work

were identified as high blood pressure; diabetes; heart, back, and digestive problems; thyroid problems; blockage in the legs; and, speech problems.  (Tr. pp. 175-183).  Plaintiff's applications for Social Security benefits were denied at the initial level of the Commissioner's administrative review process on February 26, 2009. (Tr. pp. 65-69).  Pursuant to plaintiff's request, a hearing <u>de novo</u> before an Administrative Law Judge ("ALJ") went forward on October 28, 2009 and March 31, 2010 at which testimony was elicited from plaintiff, who was represented by counsel, and a Vocational Expert ("VE").  (Tr. pp. 70-72, 29-35, 36-61).  On April 22, 2010, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act.   (Tr. pp. 7-25).   The Appeals Council ("AC") subsequently denied plaintiff's request for review of the ALJ's decision on March 13, 2012, thus making the ALJ's decision the final decision of the Commissioner.  (Tr. pp. 1-6).  It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In his cross-motion for summary judgment, plaintiff frames the issues for judicial review as follows:

I. THE FINDING THAT PLAINTIFF'S MAJOR DEPRESSIVE DISORDER AND ANXIETY DISORDER ARE NOT SEVERE IMPAIRMENTS IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND IS CONTRARY TO *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) AND 20 C.F.R. §§404.1520a(d)(1) and 416.920a(d)(1).

II. THE WEIGHT ACCORDED THE MEDICAL OPINIONS IS CONTRARY TO *Legget v.* Chater, 67 F.3d 558 (5th Cir. 1995); *Greenspan*

2

>    *v. Shalala*, 38 F.3d 232 (5th cir. 1994); *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000); *Fruge v. Harris*, 631 F.2d 1244 (5th Cir. 1980); 20 C.F.R. §§404.1527(c) and 416.927(c); AND SSR 96-2p.

>                                                           (Rec. doc. 19-1, p. 17).

Relevant to the issues to be decided by the Court are the following findings that were made by the ALJ:

>    1.   [t]he claimant meets the insured status requirements of the Social Security Act through September 30, 2007.
>
>    2.   [t]he claimant has not engaged in substantial gainful activity since October 21, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
>    3.   [t]he claimant has the following severe impairments: diabetes mellitus, hypertension, well-controlled with medication, hypothyroidism, well-controlled with medication, degenerative disc disease and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
>    4.   [t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985).
>
>    5.   [a]fter careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he would be limited to lifting/carrying up to 10 pounds frequently and 20 pounds occasionally; sitting up to 6 hours in an 8 hour work day; standing a total of 2 hours out of an 8 hour work day; walking a total of 2 hours out of an 8 hour work day for a combined total of sitting and walking of 4 hours out of an 8 hour work day; he would be required to use a cane for walking distances greater than 2 blocks, but can ambulate for 2 blocks without a cane; he can occasionally reach overhead and push/pull with either his right or left hand; he can frequently reach, handle, finger and feel with either his right or left hand; he can occasionally operate foot controls with either the right or left foot; he can never climb stairs, ramps, ladders or scaffolds, but can occasionally balance, stoop, kneel, crouch, or crawl; he can never work at unprotected heights or around moving mechanical

parts; he can occasionally operate a motor vehicle and be exposed to humidity and wetness, dust, odors and fumes, temperature extremes and vibrations; and he would have slight to moderate limitations in the ability to maintain attention and concentration and complete work tasks in a normal work day on a consistent basis.

6. [t]he claimant is unable to perform any past relevant work 20 CFR 404.1565 and 416.965).

7. [t]he claimant was born on September 12, 1962 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [t]he claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. [t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. [t]he claimant has not been under a disability, as defined in the Social Security Act, from October 21, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. pp. 12, 13-14, 20, 21, 22).

Judicial review of the Commissioner's decision to deny DIB or SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292

(5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 St.Ct. 1420 (1970). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB or SSI benefits bears the burden of proving that he is disabled with the meaning of the Social Security Act. Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of

performing substantial gainful activity and is, therefore, not disabled. Harrell, 862 F.2d at 475. In making this determination, the Commissioner utilizes the 5-step sequential analysis set forth in 20 C.F.R. §§404.1520 and 416.920, as follows:

   1. an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

   2. an individual who does not have a "severe impairment" will not be found to be disabled.

   3. an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

   4. if an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made.

   5. if an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must ultimately demonstrate that he is unable to perform the work that he has done in the past. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 St.Ct. 2287, 2294 n.5 (1987). If the analysis reaches the fifth step, the ALJ may establish that other work is available that the claimant can perform by relying on expert vocational testimony or other similar evidence to establish that such jobs exist. Fraga, 810 F.2d at 1304 (citing Lawler v. Heckler, 761 F.2d 195, 198 (5th Cir. 1985)). Once the Commissioner demonstrates that the

individual can perform other work, the burden then shifts back to the claimant to rebut that finding. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988); Fraga, 810 F.2d at 1302.

As noted earlier, plaintiff challenges the Commissioner's decision to deny him Social Security benefits on two grounds. In the first of those, plaintiff argues that the ALJ erred in failing to find that his depressive disorder and anxiety disorder were severe impairments. In addressing this challenge, the Court initially notes that plaintiff failed to identify either disorder as a disabling condition in his applications for Social Security benefits. See Pierre v. Sullivan, 884 F.2d 799, 802 (5th Cir. 1989). Second, inasmuch as plaintiff's applications for benefits proceeded past step two of the §§404.1520 and 416.920 sequential analysis and were not summarily denied at that step based on the fact that he did not suffer from a severe impairment, this challenge provides no basis for disturbing the Commissioner's decision. Adams v. Bowen, 833 F.2d 509, 512 (5th Cir. 1987); Chaparro v. Bowen, 815 F.2d 1008, 1011 (5th Cir. 1987); Wagner v. Astrue, No. 08-CV-519, 2010 WL 546739 at *7 (E.D.La. Feb. 12, 2010). In any event, although the ALJ found that plaintiff's depressive and anxiety-related disorders were non-severe, he did include in his residual functional capacity assessment ("RFCA") limitations resulting from plaintiff's mental impairments, namely, slight to moderate limitations in the ability to maintain attention

and concentration and in the ability to complete work tasks in a normal work day on a consistent basis. (Tr. p. 14). By doing so, the ALJ thus found that plaintiff did, in fact, have work-related limitations resulting from his mental impairments and there is no suggestion that the recognized limitations were understated or were insufficient. This challenge is without merit.

In his second challenge to the Commissioner's decision, plaintiff argues that the ALJ, in rendering his RFCA, accorded insufficient weight to the opinions of one of his treating physicians, Dr. Marcelle Rousseau of the Medical Center of Louisiana at New Orleans ("MCLNO"). More specifically, plaintiff alleges that the ALJ, while stating at one point in his written decision that he was "... giv[ing] controlling weight to claimant's treating physicians at the Medical Center of Louisiana at New Orleans...," failed to accord such weight to the findings set forth in a Physical Capacity Evaluation ("PCE") form that had been completed by Dr. Rousseau on July 22, 2009. (Tr. pp. 20, 16-17).

The law is clear that the ALJ has the sole responsibility for determining a claimant's disability status and is free to reject the opinion of <u>any</u> physician when the evidence supports a contrary conclusion. <u>Newton v. Apfel</u>, 209 F.3d 448, 455 (5th Cir. 2000) (quoting <u>Paul v. Shalala</u>, 29 F.3d 208, 211 (5th Cir. 1994), <u>overruled in part on other grounds by Sims v. Apfel</u>, 530 U.S. 103, 120 S.Ct. 2080 (2000)). A treating physician's opinions are not

8

conclusive and may be assigned little or no weight when good cause is shown.  Newton, 209 F.3d at 456 (citing Brown v. Apfel, 192 F.3d 492, 500 (5th Cir. 1999) and Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984 (1995)).  Good cause exists when the treating physician's opinions are so brief and conclusory that they lack persuasive weight, when they are not supported by medically acceptable techniques, or when the evidence supports a different conclusion.  Newton, 209 F.3d at 456; Martinez v. Chater, 64 F.3d 172, 176 (5th Cir. 1995); Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir. 1987); Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985).  The Regulations require the ALJ to perform a detailed analysis of a treating physician's views under the criteria set forth in 20 C.F.R. §§404.1527(c) and 416.927(c) (formerly §§404.1527(d) and 416.927(d)) only in the absence of controverting medical evidence from other treating and/or examining physicians.  Newton, 209 F.3d at 453.

On July 22, 2009, plaintiff presented himself as a "walk-in" to Dr. Rousseau who was on that day seeing patients at the Frederick Douglas Community Clinic.  (Tr. pp. 361-364).  The stated reason for plaintiff's visit was to get the PCE form filled out.  (Id.).  In his clinical report, Dr. Rousseau recalled plaintiff's history of insulin-dependent diabetes, coronary artery disease status post stent placement, hypertension, chronic stable angina, possible sleep apnea, peripheral neuropathy, and hypothyroidism.

9

Plaintiff had last been seen by the doctor on May 29, 2009 for acute sinusitis. Plaintiff complained of a sinus headache off and on, nightly chest pain, a constant thirst, tightness and soreness in the throat, shortness of breath when lying down, an occasional cough, and decreased appetite. He had not received appointments for any of the referrals that the doctor had ordered at his previous visit and had forgotten to increase the dosage of insulin as directed. Peripheral neuropathy and leg pain were not relieved with Neurontin which plaintiff had run out of the previous week. Upon physical examination, plaintiff had tachycardia but otherwise normal heart function with no murmurs, rubs, or gallops. There was no edema in the lower extremities and peripheral pulses were 2+ posterior tibial bilaterally. In terms of the musculoskeletal system, plaintiff was able to flex his wrist to 130 degrees, could bend at the knee to touch the floor, was able to have symmetric normal hand grip and finger strength bilaterally, and could push and pull his arm with no distress otherwise. The assessment was diabetes mellitus and plaintiff was instructed to increase the dosage of his medication as had been ordered at his last visit. (Id.).

On that same date, Dr. Rousseau completed the FCE form for plaintiff based upon the symptoms that were described by him. (Tr. p. 363). According to that self-report, plaintiff was said to be capable of standing or walking less than one hour in an eight-hour

day due to leg and back pain.  He could sit for two hours in an eight-hour day but could do so for longer periods if allowed to move about intermittently.  Plaintiff could occasionally and frequently lift/carry less than ten pounds, stating the he got dizzy if he tried to lift greater weights.  He could perform simple grasping and handling maneuvers, could push and pull, and could engage in fine manipulation and fingering.  Feet could be used for repetitive movements such as operating foot controls.  Plaintiff stated that he could occasionally bend, kneel, squat, and climb stairs but could never crawl or climb ladders, becoming dizzy with the latter activity.  He was able to reach above shoulder level. In answer to the question asking for the conditions resulting in his limitations, plaintiff reported chronic back pain and diabetic retinopathy.  Due to pain, plaintiff was also said to have a mild limitation in the ability to perform activity within a schedule, to maintain regular attendance, and to be punctual with customary tolerance.  He also had a moderate limitation in the ability to complete a normal work day and week without interruption from medically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  He was not required, however, to keep his legs elevated above his heart. (Tr. pp. 331-333).  Plaintiff was to be referred for a sleep study, an EMG secondary to peripheral neuropathy, and an ankle-brachial index secondary to possible claudication.  (Tr. p. 363).

In due course, plaintiff would receive a consultative evaluation by Dr. Miljana Mandich on November 23, 2009. Plaintiff's complaints at the time were high blood pressure, diabetes, coronary artery disease, obstructive sleep apnea, a thyroid disorder, and chest and low back pain. In terms of plaintiff's heart problems, the doctor noted that records from University Hospital revealed that plaintiff had undergone a coronary angiogram in September of 2009 which demonstrated no significant coronary artery disease or peripheral arterial disease. Low back pain existed since an injury at work in 1991 and a lumbar MRI from the previous month was reportedly positive for arthritis in the lower back and some nerve damage in the right leg with resulting occasional numbness in that extremity. A nerve conduction study that had been performed in September of 2009 was negative for evidence of peripheral neuropathy in the legs. Sleep was interrupted due to obstructive sleep apnea and plaintiff occasionally experienced sharp pain and pressure in the upper middle and left chest, accompanied by a headache, which woke him up from sleeping with the symptoms lasting ten to twenty minutes with or without nitroglycerin.

Upon physical examination, plaintiff stood at 5'7" in height and weighed 238 pounds. His blood pressure was 110/70. Plaintiff was noted to ambulate without difficulty and without the use of an assistive device in the doctor's office, although he had brought a

cane with him that he used to support his back when outside. He ambulated with some self support getting on and off the chair and examining table but had normal gait and station. Range of motion of the neck was normal. Plaintiff guarded his lower back, thus limiting the range of motion, and he complained of pain across the back at the level of the sacroiliac joint. He could briefly walk on his heels and toes and squat one third of the way down and rise without support. Straight leg raising was negative bilaterally. In terms of the cardiovascular system, the borders of cardiac dullness were within normal limits and heart sounds were normal with no murmurs, shocks, thrills, gallops, or clicks. All peripheral pulses were normal. There was no edema and no visible abnormalities or complaints respecting the extremities with a full range of motion of all joints, although plaintiff reported that he experienced pain and swelling in the lower legs and knees with prolonged standing and walking. Neurologically, there was normal symmetrical muscle bulk, tone, strength, and superficial sensation with 1+ symmetrical deep tendon reflexes at the knee and a trace at other areas. Plaintiff could walk indoors and short distances without the cane but needed it when walking outside more than two blocks. X-rays of the lumbar spine revealed spondylolysis at L5 with associated grade 2 spondylolithesis at L5-S1 and degenerative 3rd and 5th lumbar discs.

Based on the results of the evaluation, Dr. Mandich rendered

the following diagnoses: 1) obesity; 2) hypertension; 3) adult onset insulin-dependent diabetes and dyslipidemia; 4) primary hyperthyroidism; 5) an allegation of obstructive sleep apnea diagnosed in 2003 but no C-PAP use; 6) an allegation of coronary artery disease which could not be confirmed due to normal coronary and peripheral angiograms in September of 2009; 7) atypical chest pain suggestive of GERD; and, 8) chronic low back pain and degenerative joint disease in the lumbar spine. (Tr. pp. 394-396, 403-409.)

In conjunction with the evaluation, the doctor also completed the Administration's form denominated "Medical Source Statement of Ability To Do Work-Related Activities (Physical)". There, the doctor checked off the appropriate boxes to indicate that plaintiff could frequently lift or carry up to ten pounds and could occasionally lift or carry up to twenty pounds as a result of low back pain; could sit for eight hours in an eight-hour workday, six without interruption; could stand for two hours in an eight-hour workday; could walk for two hours in an eight-hour workday; required the use of a cane after walking two blocks due to chronic low back pain/degenerative joint and disc disease in the lumbar spine, a decreased range of motion in the thoracolumbar region, and abnormal lumbar x-rays; could frequently reach, handle, finger, and feel and could occasionally reach overhead and push/pull with both hands; could occasionally operate foot controls with both feet due

to low back pain and swelling in the legs by history; could never climb stairs, ramps, ladders, or scaffolds but could occasionally balance, stoop, kneel, crouch, and crawl due to obesity and low back pain; had no hearing or visual impairments; and, could never work at unprotected heights or around moving mechanical parts but could occasionally tolerate the other environmental conditions and moderate noise. (Tr. pp. 397-402). It was essentially these limitations that the ALJ used in arriving at his RFCA of plaintiff. (Tr. pp. 13-14).

Having stated at one point in his written decision that he was giving controlling weight to the opinions of plaintiff's treating physicians at MCLNO, plaintiff argues that the ALJ erred in failing to accord such weight to the PCE form that was completed by Dr. Rousseau, providing no explanation for its rejection. (Rec. doc. 19-1, pp. 23-25). As the ALJ stated in his written decision, however, and as was indicated by Dr. Rousseau in his clinical report of July 22, 2009, the PCE form merely contained a recitation of the symptoms that were described by the plaintiff himself. (Tr. pp. 16, 363). That circumstance may properly be considered by the ALJ in determining the weight to be given to a doctor's report. Greenspan v. Shalala, 38 F.3d 232, 237-38 (5th Cir. 1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984 (1995). That the ALJ gave diminished weight to plaintiff's subjective complaints which were simply recorded by Dr. Rousseau in the PCE form is further

confirmed elsewhere in the ALJ's written decision, as follows:

> [c]laimant's attorney, Rebecca Dean asked to (sic) vocational expert to assume that the above described hypothetical individual would be limited to standing less than one hour in an eight hour work day due to back and leg pain; walking less than one hour in an eight hour work day and sitting less than two hours in an eight hour work day, and possibly up to four hours, if allowed to move around intermittently.  The vocational expert stated that such restrictions would limit a person to less than an eight hour work day if totaled and thus would eliminate fulltime employment.
>
> I find that the hypothetical question posed by Ms. Dean does not adequately reflect the claimant's ability to function in a work environment.  <u>While the hypothetical question was based upon a physical capacity form completed by claimant's physician at the Medical Center of Louisiana, the physician clearly stated that it was based upon the symptoms as described by claimant and what claimant stated that he could do</u>.  Therefore, I have not afforded any weight to the vocational expert's response.

(Tr. p. 22)(emphasis added).

The Court further notes in his clinical note of July 22, 2009, Dr. Rousseau's only diagnosis was diabetes mellitus for which an increase in plaintiff's insulin was ordered.  (Tr. pp. 362-363). In the Fifth Circuit, diabetes is considered to be a remediable condition provided that the claimant is able to afford the drugs needed for its control.  <u>Tamez v. Sullivan</u>, 888 F.2d 334, 336 (5th Cir. 1989).  Including July 22, 2009, plaintiff would be seen by Dr. Rousseau on a total of seven (7) occasions.  On none of those occasions did the doctor impose any restrictions on plaintiff's activities nor was there any mention of the need for an assistive device for walking.  On the first of those occasions, plaintiff was followed for his diabetes, hypertension, coronary artery disease

16

(with a recent negative stress test), hyperthyroidism and possible sleep apnea, with adjustments being made to plaintiff's medications. (Tr. pp. 368-371). On the second occasion, May 29, 2009, the primary diagnosis was acute sinusitis with attendant symptoms followed by diabetes and hypertension. (Tr. pp. 365-367). Subsequent to the office visit of July 22, 2009, plaintiff was seen by Dr. Rousseau for a fourth time on July 30, 2009 with some dietary non-compliance being reported and the primary complaint at the time being erectile dysfunction. (Tr. pp. 357-360). On that date, plaintiff also reported that Neurontin was helpful in treating his neuropathy and that his back pain was improved with stretching. (Id.). Upon physical examination, plaintiff's cardiovascular system was normal, there was no lower extremity edema or spinal tenderness, and straight leg raising was negative. (Id.). Adjustments to plaintiff's medications were made and further testing was ordered. (Id.).

On August 3, 2009, x-rays of plaintiff's lumbar spine revealed spondylolysis and spondylolisthesis at L5 and chronic abnormalities of the L3 and L5 discs. (Tr. p. 380). Following complaints of chest pain and shortness of breath to Dr. Khazi Syed on August 27, 2009, plaintiff underwent cardiac catherization on September 10, 2009 which demonstrated no significant coronary artery or peripheral artery disease. (Tr. pp. 354-356, 375-377). In light of those test results, plaintiff was prescribed erectile

17

dysfunction medication by Dr. Rousseau on September 14, 2009. (Tr. pp. 351-353). Testing on September 29, 2009 revealed no nerve conduction evidence of peripheral neuropathy in the lower extremities. (Tr. p. 348). An MRI of the lumbar spine on October 26, 2009 confirmed the abnormalities noted above but no disc herniations and no stenosis of the spinal cord. (Tr. p. 389). When plaintiff returned to Dr. Rousseau on November 12, 2009, he reported right sided pain after eating greasy/spicy foods and an ultrasound was ordered. (Tr. pp. 411-413). Plaintiff was also referred to pain management for his low back pain. (Id.). Plaintiff was then treated for a possible insect bite to the foot on November 17, 2009 and he briefly received inpatient treatment for cellulitis around this time. (Tr. pp. 414-417, 418).

On November 23, 2009, plaintiff was consultatively evaluated by Dr. Mandich whose medical report and medical source statement are by far the most comprehensive in the record. (Tr. pp. 394-409). At a routine follow-up appointment with Dr. Rousseau on December 22, 2009, plaintiff reported this his right-sided pain and leg swelling and pain were much improved. (Tr. pp. 419-422). Some low back pain remained but there was no edema or tenderness and straight leg raising was negative bilaterally. The assessment was dyslipidemia, polyuria, low back pain, anemia, and diabetes. (Id.). Once again, no physical limitations were imposed by the doctor.

18

Because the information contained within the PCE form that was completed by Dr. Rousseau was simply a recitation of plaintiff's subjective complaints, it did not constitute medical opinion evidence that was deserving of deference.[1]/ Based upon the body of the credible, objective evidence that was before him the Court believes that the ALJ's RFCA was appropriate. And because the record contains medical evidence from an examining physician like Dr. Mandich, the ALJ was under no duty to perform the detailed analysis of Dr. Rousseau's opinions under §§404.1527(c) and 416.927(c), to the extent that he did not, or to recontact Dr. Rousseau for clarification or additional evidence. Newton, 209 F.3d at 453. See also Holifield v. Astrue, 402 Fed.Appx. 24, 27 (5th Cir. 2010).

## RECOMMENDATION

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being

---

[1]/ As respects plaintiff's application for DIB, the Court parenthetically notes that plaintiff bore the burden of establishing his disability before the expiration of his insured status on September 30, 2007. Ivy v. Sullivan, 898 F.2d 1045, 1048 (5th Cir. 1990)(citing Milam v. Bowen, 782 F.2d 1284 (5th Cir. 1986)). The PCE form that was completed by Dr. Rousseau falls well outside of this time period.

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en banc</u>).

New Orleans, Louisiana, this <u>7th</u> day of <u>  March  </u>, 20<u>13</u>.

_____
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE